IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LYNETTE FITZGERALD     *
                                   *
                                   *
      v.                              *       Civil No.  JFM-12-38
                                   *
COLONIAL LIFE & ACCIDENT INS. CO.   *
                                ******

## **MEMORANDUM**

Jeffrey J. Fitzgerald died from drowning after falling off a pier.  His wife, Lynette Fitzgerald, who was the beneficiary under a Group Term Life Insurance Certificate (the "Certificate") issued by defendant, Colonial Life & Accident Insurance Company ("Colonial Life"), has filed this action seeking to recover $100,000, the policy benefit for accidental death.

Plaintiff initially filed this action in the Circuit Court for Prince George's County, Maryland.  Colonial Life removed the action to this court on the ground that plaintiff's claim arises under ERISA.  Both sides have filed cross-motions for summary judgment.  Colonial Life's motion will be granted, and plaintiff's motion will be denied.

I.

The Certificate contains exclusions from coverage for "any accidental losses caused by, contributed to by, or resulting from . . . illegal use of any drug . . . [or] the presence of that percentage of alcohol in the insured's blood which raises a presumption that the insured was under the influence of alcohol." (Certificate, Def.'s Opp'n to Mot. for Summ. J & Cross-Mot. for Summ. J. ("Def.'s Opp'n") Ex. 2, at 21, ECF No. 15-3).  As to the latter exclusion, the Certificate further provides that "[t]he blood-alcohol level which raises this presumption is governed by the laws of the state in which the accident occurred." (*Id.*)

1

The evidence in the record is undisputed that Jeffrey Fitzgerald had had too much to drink on the evening of September 19, 2009, when he fell in the water and drowned. That evening Fitzgerald was at the Pier 7 Marina located in Edgewater, Maryland. (*See* Police Report, Pl.'s Mot. for Summ. J. Ex. 4, ECF No. 5-6, at 3). From witness accounts, set forth in the police department incident report, Fitzgerald had spent the evening drinking alcoholic beverages and watching a football game on the pier. (*Id.*). At some point, Fitzgerald was carrying a large television from the pier back to a boat docked at the pier. (*Id.*). Witnesses heard a large splash when Fitzgerald fell off the pier and into the water. (*Id.*). Later, his body was discovered in fifteen to twenty feet of water approximately twenty feet from the end of the pier. (*Id.*). He was pronounced dead at the scene. (*Id.*). The autopsy report indicates that drowning was the cause of death and there was no evidence of any significant injures to Fitzgerald's head or other body parts. (Autopsy Report, Pl.'s Mot. for Summ. J., Ex. 1, at 5). Toxicology testing was performed as part of the autopsy examination, several hours after his death. (*Id.* at 5–6). It showed that Fitzgerald's blood-alcohol level was 0.27 vitreous and 0.31 in his urine. (*Id.* at 6).[1]

---

[1] The report also found cocaine in Fitzgerald's urine. (Autopsy Report, Pl.'s Mot. for Summ. J., Ex. 1, at 5–6). Based upon that finding, Colonial Life also determined the exclusion for the use of illegal drugs contained in the Certificate applied. (*See* Pl.'s Mot. for Summ. J., Ex. 5, at 2–3, ECF No. 5-7; Def.'s Opp'n at 7). Plaintiff attached to her memorandum in support of her motion for summary judgment the report of a toxicologist stating that "[g]iven the prolonged duration that cocaine and its metabolites can be detected in urine, no correlation can be made between the mere presence of the drug and its metabolites in urine and intoxicating effects of the drug at the time of this drowning incident." (Pl.'s Mot. for Summ. J., Ex. 6, at 2, ECF No. 5-8). That report was not submitted to Colonial Life at the time that it made its decision and arguably therefore should not be considered by me in determining whether Colonial Life's decision constituted an abuse of discretion. *See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1995)("[a]ssessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time"). I need not decide that issue, however, in light of the fact that I find that Colonial Life's decision that the alcohol intoxication exclusion applied was not an abuse of discretion.

Plaintiff thereafter filed a claim for benefits under the Certificate. (*See* Pl.'s Mot. for Summ. J., Ex. 5, at 2, ECF No. 5-7). As part of its evaluation of the claim, Colonial Life obtained and reviewed copies of the police report, the death certificate, the post-mortem examination report, a toxicology report, and newspaper accounts about the incident. (Def.'s Opp'n at 6–7). One of its representatives also spoke with the responding police officer who stated that, according to his investigation, Fitzgerald was "extremely intoxicated" and was carrying a 42" television when he fell. (*Id.* at 7). The police officer also reported that Fitzgerald was walking on a four-foot pier when he fell into the water. (*Id.*). A newspaper account stated that Fitzgerald knew how to swim. (*Id.* at 6).

Colonial Life concluded that plaintiff should be paid the straight Certificate amount of $100,000 plus interest, but that plaintiff was not entitled to any benefits under the Accidental Death & Dismemberment Plan. (*See* Pl.'s Mot. for Summ. J., Ex. 5, at 2–4, ECF No. 5-7). Plaintiff appealed that determination by letter dated March 14, 2011. (*See id.* at 2). Colonial Life again performed a comprehensive review of the record and determined that Jeffrey Fitzgerald's death was caused by, contributing to or resulted from his use of illegal drugs or alcohol. (*See id.*) This suit followed.

II.

Neither party disputes that the interpretation of the Certificate is governed by ERISA. (Pl.'s Statement of Material Facts Not in Dispute ¶ 5, ECF No. 5–1; Def.'s Opp'n at 9, ECF No. 15–1). The Certificate provides that "[w]hen making a benefit determination under the Summary of Benefits, we have discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits." (Certificate, Def.'s Opp'n Ex. 2, at 1, ECF No. 15-3). Because the Certificate's language confers discretionary authority upon

3

Colonial Life to interpret the language of the Certificate and to make claims decisions, an abuse of discretion standard applies in reviewing its decision. *Champion v. Black & Decker (U.S.), Inc.*, 550 F.3d 353, 358 (4th Cir. 2008). Under this standard, an administrator's decision "will not be disturbed if reasonable." *Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). Although Colonial Life has a conflict of interest by virtue of the fact that it is both the administrator and the insurer, this does not automatically mean that the abuse of discretion standard should not be applied, but only that the conflict constitutes a factor that must be considered in deciding if Colonial Life did abuse its discretion. *Champion,* 550 F.3d at 359 (citing *Metro. Life. Ins. Co. v. Glenn,* 558 U.S. 105 (2008)).

III.

In support of its decision to deny the accidental death benefit to plaintiff, Colonial Life relies upon Section 10-307(g) of the Courts and Judicial Proceedings Article of the Maryland Code. That provision establishes the presumption that a person should be considered under the influence of alcohol if at the time of testing a person "has an alcohol concentration of 0.08 or more." Md. Code Ann., Cts. & Jud. Proc. § 10-307(g). As noted above, the toxicology report prepared at the same time as the autopsy report stated Fitzgerald's blood alcohol level was 0.27 vitreous and 0.31 in his urine, substantially above this measurement. (Autopsy Report, Pl.'s Mot. for Summ. J., Ex. 1, at 6).

Plaintiff contends, however, that under Maryland law the presumption of being under the influence of alcohol applies only where a person is charged with driving a motor vehicle or operating a vessel while intoxicated—neither of which Fitzgerald was doing when he drowned. (Pl.'s Mot. for Summ. J. at 1–2). Further, plaintiff contends that under Maryland law the report

of the toxicology testing would not have been admissible in court because the test was performed more than two hours after Mr. Fitzgerald's death. (*Id.* at 2). Maryland law requires that "for the purpose of a test for determining alcohol concentration," the blood be taken within two hours of a person being apprehended. Md. Code Ann., Cts. & Jud. Proc. § 10-303(a)(2))). Therefore, plaintiff argues no presumption was raised under Maryland law that Fitzgerald was under the influence of alcohol at the time of his death and the alcohol exclusion contained in the Certificate—which requires "the presence of that percentage of alcohol in the insured's blood which raises the presumption [under Maryland law] that the insured was under the influence of alcohol"—is inapplicable. (Pl.'s Mot. for Summ. J. at 1–2; Certificate, Def.'s Opp'n Ex. 2, at 21, ECF No. 15-3).

Although, as stated above, there is overwhelming evidence that Fitzgerald was drunk when he fell in the water and drowned, plaintiff's argument is not without force in light of the language of the exclusion. Different courts have reached different conclusions under similar circumstances. *Compare Veal v. Nationwide Life Ins. Co*, No. 05:09–cv–356/RS/MD, 2010 WL 1380170, at *4 (N.D. Fla. March 31, 2010) (upholding an administrator's decision to apply the exclusion and stating that reliance on the blood alcohol level presumed to constitute intoxication under the state law prohibiting the use of a firearm while under the influence of alcohol was reasonable), *and Hammond v. American Family Life Assur. Co. of Columbus*, Civil No. 07–0423, 2008 WL 2816202, at *6 (W.D. La. July 22, 2008) (upholding an administrator's decision to apply the exclusion when the insured died after a single-vehicle car accident) *with Papotto v. Hartford Life & Acc. Ins. Co.*, Civil No. 10–4722 RMB/AMD, 2011 WL 6939331, at *5–6(D. N.J. Dec. 30, 2011) (finding it reasonable for an administrator to rely on a state DWI statute to

measure the insured's level of intoxication, but remanding the case to the administrator for the insurance company to prove intoxication was the cause of the insured's death).[2]

In my judgment the fact that two courts have upheld interpretations similar to that of Colonial Life is dispositive of the issue, in light of the deferential standard of review that applies. Indeed, arguably the fact that two courts have found Colonial Life's interpretation of the policy language reasonable itself establishes that the interpretation does not constitute an abuse of discretion.

I am not content, however, to rely upon that fact alone. Were I to do so, I believe I would be shirking my responsibility to independently review the reasonableness of Colonial Life's interpretation of the language of the Certificate in this case. The question is not entirely free from doubt. Colonial Life drafted the language of the exclusion, and it could be construed to exclude coverage only where a presumption has been raised that would have been applicable if the insured had been charged with committing the crime of driving under the influence under Maryland law. This interpretation is perhaps supported by the "drug" exclusion which applies only to the "illegal use of any drug." (*See* Certificate, Def.'s Opp'n Ex. 2, at 21, ECF No. 15-3). On the other hand, the language of the Certificate can also be construed as preventing a beneficiary from recovering an increased benefit for accidental death where the insured's own irresponsible conduct led to his death. With this in mind, the language of the exclusion, somewhat inartful though it may be, can be read not as limiting the exclusion only to situations where the insured's intoxication constituted a crime under Maryland law but to all situations

---

[2] In the *Papotto* case the court remanded the case for further evaluation as to whether the insured, in fact, was intoxicated when he died and, if so, whether his intoxication caused his death. *See Papotto*, 2011 WL 6939331, at *6. In contrast, here no reasonable person could find that Fitzgerald was not intoxicated when he died and that his intoxication was a contributing factor, to his falling into the water and drowning.

where the insured's own irresponsible conduct caused or contributed to his death. Thus understood, the reference to a "presumption" raised under state law can be read only as serving the worthwhile purpose of establishing an objective measurement by which an insured's state of inebriation is to be evaluated.

For these reasons, I find that under the abuse of discretion standard that applies in reviewing Colonial Life's decision not to grant a benefit for accidental death to plaintiff that Colonial Life's decision was not unreasonable.[3] A separate order effecting the rulings made in this memorandum is being entered herewith.


Date: March _26_____, 2012            /s/_____
                                      J. Frederick Motz
                                      United States District Judge

---

[3] Because I am entering summary judgment on behalf of Colonial Life, I am not ruling upon plaintiff's claims for prejudgment interest and an attorney's fees. In case it might expedite matters and reduce litigation costs in the event that my ruling in reversed on appeal, I note that if Colonial Life's decision should not be upheld, I would award prejudgment interest, but not an attorney's fee, to plaintiff. I would award the former in order to make plaintiff whole but would not award the latter because there is no basis for finding that Colonial Life acted in bad faith and lacked merit. *See generally Reinking v. Philadelphia Am. Life Ins. Co.*. 910 F. 2d 1210, 1217-18 (4th Cir. 1990), *overruled on other grounds in part by Quesinberry v. Life Ins. Co. of No. Am.*, 987 F.2d 1017 (4th Cir. 1993).